HON. MARSHA J. PECHMAN

UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

SARAH HAWES KIMSEY; TARUL KODE TRIPATHI; and CATHERINE FREUDENBERG,

                  Plaintiffs,

    v.

CITY OF SAMMAMISH, a municipal corporation; and CELIA WU, an individual,

                  Defendants.

CASE NO. 2:21-cv-01264 MJP

DEFENDANT CITY OF SAMMAMISH'S OPPOSITION TO PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION

**NOTED ON MOTION CALENDAR:**

November 5, 2021

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone: (206) 676-7000
Fax: (206) 676-7001

# TABLE OF CONTENTS

Page

I.    INTRODUCTION .................................................................................................... 1

II.   FACTS ..................................................................................................................... 1

    A.    The City's Facebook Page. ........................................................................... 1

    B.    The Plaintiffs' Comments. ............................................................................ 3

        1.    Plaintiffs' City Council Meeting Comments ................................... 4

        2.    Plaintiffs' Off-Topic Comments ..................................................... 5

        3.    Plaintiffs Continue to Comment on the City's Facebook Page. ................. 9

III.  ARGUMENT AND AUTHORITY ........................................................................ 10

    A.    Preliminary Injunction Standard ................................................................ 10

    B.    Plaintiffs Are Unlikely to Prevail on the Merits. ....................................... 11

        1.    The City's Facebook Page is a Limited Public Forum. ........................... 11

        2.    The City's Facebook Page Satisfies the More Lenient Test for Limited Public Forums. ................................................................. 14

    C.    Plaintiffs Have Failed to Establish a Likelihood of Irreparable Harm. ................. 23

    D.    The Balance of Equities and Public Interest Weigh Against Injunctive Relief. ....................................................................................... 23

IV.   CONCLUSION ...................................................................................................... 24

DEFENDANT CITY OF SAMMAMISH'S OPPOSITION TO
PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION - i
(CASE NO. 2:21-cv-01264 MJP)

SUMMIT LAW GROUP, PLLC
315 FIFTH AVENUE S., SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone:  (206) 676-7000
Fax:  (206) 676-7001

1

## TABLE OF AUTHORITIES

2

Page(s)

**Cases**

3

*Am. Civil Liberties Union of Nev. v. City of Las Vegas*,
4    333 F.3d 1092 (9th Cir. 2003) ........................................................................11, 15

5    *Am. Freedom Defense Initiative v. King Cnty.*,
     904 F.3d 1126 (9th Cir. 2018) ..............................................................................14

6    *Amalgamated Transit Union Local 1015 v. Spokane Transit Auth.*,
7    929 F.3d 643 (9th Cir. 2019) ..........................................................................11, 15

8    *Anderson v. United States*,
     612 F.2d 1112 (9th Cir. 1980) ..............................................................................10

9    *Caribbean Marine Servs. Co. v. Baldridge*,
10   844 F.2d 668 (9th Cir. 1988) .................................................................................23

11   *Charudattan v. Darnell*,
     834 Fed. Appx. 477 (11th Cir. 2020) ..............................................................14, 17

12   *College Republicans of the Univ. of WA v. Cause*,
     2018 WL 804497 (W.D. Wash. Feb. 9, 2018) ...........................................15, 17, 19

13   *Cornelius v. NAACP Legal Defense & Ed. Fund, Inc.*,
14   473 U.S. 788 (1985) ...........................................................................................1, 16

15   *Dahl v. HEM Pharm. Corp.*,
     7 F.3d 1399 (9th Cir. 1993) .............................................................................11, 24

16   *Davis v. Colerain Twp.*,
17   2021 WL 3271792 (S.D. Ohio July 30, 2021) ...........................................14, 17, 20

18   *Davison v. Plowman*,
     247 F. Supp. 3d 767 (E.D. Va. 2017) ............................................................. Passim

19   *Drakes Bay Oyster Co. v. Jewell*,
     747 F.3d 1073 (9th Cir. 2014) ..............................................................................10

20
     *Edge v. City of Everett*,
21   929 F.3d 657 (9th Cir. 2019), *cert. denied*, ___ U.S. ___, 140 S. Ct. 1297 (2020) ...10, 18, 19, 23

22   *Freedom Found. v. Sacks*,
     2021 WL 1250526 (W.D. Wash. Apr. 5, 2021) .....................................................20

23   *Garnier v. Poway Unified School Dist.*,
24   2019 WL 4736208 (S.D. Cal. Sep. 26, 2019)........................................................13

25   *Garrett v. City of Seattle*,
     2010 WL 4236946 (W.D. Wash. Oct. 20, 2010)....................................................11

26

DEFENDANT CITY OF SAMMAMISH'S OPPOSITION TO
PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION - ii
(CASE NO. 2:21-cv-01264 MJP)

SUMMIT LAW GROUP, PLLC
315 FIFTH AVENUE S., SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone:  (206) 676-7000
Fax:  (206) 676-7001

*Good News Club v. Milford Cent. School,*
    533 U.S. 98 (2001) ...................................................................................................14

*Grayned v. City of Rockford,*
    408 U.S. 104 (1972) .................................................................................................18

*Herbert v. Balducci,*
    2013 WL 5176766 (W.D. Wash. Sep. 11, 2013) ...........................................10, 23, 24

*Hernandez v. City of Phoenix,*
    2021 WL 2138769 (D. Ariz. 2021) .........................................................................18

*Hotel Emps. & Rest. Emps. Union et al v. City of N.Y. Dep't of Parks & Recreation,*
    311 F.3d 534 (2nd Cir. 2002) .........................................................11, 16, 19, 20

*Int'l Soc'y for Krishna Consciousness, Inc. v. Lee,*
    505 U.S. 672 (1992) .................................................................................................16

*Knight First Amendment Inst. at Columbia Univ. v. Trump,*
    928 F.3d 226 (2019), *judgt. vacated as moot,* 141 s. Ct. 1220 (2021) .....................12

*Monterey Mech. Co. v. Wilson,*
    125 F.3d 702 (9th Cir. 1997) ...................................................................................23

*Murinko v. Strange,*
    2019 WL 11769103 (W.D. Wash. Oct. 10, 2019) ..............................................10, 11

*Perry Educ. Ass'n v. Perry Local Educators' Ass'n*
    460 U.S. 37, 47 (1984) ......................................................................................12, 20

*Pleasant Grove City, Utah v. Summum,*
    555 U.S. 460 (2009) ..........................................................................................12, 15

*Republic of Philippines v. Marco,*
    862 F.2d 1355 (9th Cir. 1988) .................................................................................23

*Requa v. Kent School Dist. No. 415,*
    492 F. Supp. 2d 1272 (W.D. Wash. 2007) .........................................................11, 23, 24

*Rosenberger v. Rector & Visitors of Univ. of Va.,*
    515 U.S. 819 (1995) ..........................................................................................12, 19

*Seattle Mideast Awareness Campaign v. King Cnty.,*
    781 F.3d 489 (9th Cir. 2015) ............................................................................. Passim

*Steinburg v. Chesterfield Cnty. Planning Comm'n,*
    527 F.3d 377 (4th Cir. 2008) ...................................................................................13

*Stevens v. Town of Snow Hill, N.C.,*
    2021 WL 2345353 (E.D.N.C. June 8, 2021), *appeal filed* .............................13, 17, 24

*White v. City of Norwalk,*
    900 F.2d 1421 (9th Cir. 1990) ............................................................................14, 17

DEFENDANT CITY OF SAMMAMISH'S OPPOSITION TO
PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION - iii
(CASE NO. 2:21-cv-01264 MJP)

SUMMIT LAW GROUP, PLLC
315 FIFTH AVENUE S., SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone: (206) 676-7000
Fax: (206) 676-7001

1

*Winter v. NRDC*,
  555 U.S. 7 (2008) ...................................................................................................................10

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

SUMMIT LAW GROUP, PLLC
315 FIFTH AVENUE S., SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone:  (206) 676-7000
Fax:   (206) 676-7001

## I.  INTRODUCTION

The City of Sammamish has created a limited public forum on its Facebook page to inform its citizens of important public safety and other information.  The public is invited to comment in accordance with the viewpoint-neutral rules that are standard for such a government page.  Plaintiffs have wantonly violated these rules.  They now cloak themselves in the First Amendment and demand that they are entitled to coopt the City's page as their own.  "Nothing in the Constitution requires the Government freely to grant access to all who wish to exercise their right to free speech on every type of Government property without regard to the nature of the property or to the disruption that might be caused by speaker's activities."  *Cornelius v. NAACP Legal Defense & Ed. Fund, Inc.*, 473 U.S. 788, 798-800 (1985).

Plaintiffs' lawsuit is baseless and, having met none of the requirements or heightened standard for mandatory preliminary injunctive relief, Plaintiffs' motion should be denied.

## II.  FACTS

### A.    The City's Facebook Page.

The City "has an official government Facebook page" where it "posts information and links about current events and government actions in Sammamish[.]"  Dkt #4, Mot. for P.I. at 1:22-24.  As is standard for municipal Facebook pages, "[t]he City has posted a list of rules prohibiting certain kinds of" "comments on the page, and states that" "comments in violation of these rules are subject to immediate removal."  *Id.* at 1:24-26.  As Plaintiffs note, the rules for posting on the City's Facebook page are as follows:

> All posts are subject to public disclosure.  Inappropriate and prohibited content subject to immediate removal from the site and includes content:
>
> 1. That is not related to the particular article being commented on
> 2. Promotes or advertises commercial service, entities or products
> 3. Supports or opposes political candidates or ballot propositions
> 4. Is obscene
> 5. Discusses or encourages illegal activity
> 6. Promotes, fosters or perpetuates discrimination on the basis of creed, color, age, religion, gender, marital status, status with regard to public assistance, national origin, physical or mental disability or sexual orientation

DEFENDANT CITY OF SAMMAMISH'S OPPOSITION TO
PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION - 1
(CASE NO. 2:21-cv-01264 MJP)

SUMMIT LAW GROUP, PLLC
315 FIFTH AVENUE S., SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone:  (206) 676-7000
Fax:  (206) 676-7001

7. Provides information that may potentially compromise the safety or security of the public or public systems
8. Violates a legal ownership
9. Sexual content or links to sexual content
10. Comments from children under 13 cannot be posted in order to comply with the Children's Online Privacy Act
11. Anonymous posts

Dkt #5, Decl. of Catherine Freudenberg in Supp. of Pls.' Mot. for P.I. ("Freudenberg Decl."), Ex. 1. Plaintiffs seek to enjoin the City's enforcement of the word "inappropriate" and its first, third, and fifth commenting rules. Mot. for P.I. at 6:14-16.

The City uses its Facebook page to communicate information relevant to the residents of Sammamish, such as upcoming events and updates. The City also uses its Facebook page to communicate with residents on matters important to public safety, such as severe weather events, power outages, road and park closures, and COVID-19 related news. Decl. of Celia Wu in Opp'n to Pls.' Mot. for P.I. ("Wu Decl.") ¶ 3. The City's rules for commenting on its Facebook page help the City effectively communicate relevant information to the public and protect the rights of those who want to discuss the information being conveyed. *Id.* ¶ 4. Comments that violate these rules distract from and dilute the important information the City is providing the public. *Id.* ¶ 5.

For approximately six months in 2020, the City live streamed City Council meetings, which were held virtually due to COVID-19, on its Facebook page, allowing the public to watch and comment on the live meetings in real time and/or after the video was published to the City's Facebook page. *Id.* ¶ 6. The City has continued streaming its City Council meetings on Channel 21 and its YouTube channel, but ceased streaming on Facebook due to multiple and persistent technical issues, as well as the lack of staff to monitor the feed well into the night (City Council meetings have gone past midnight on many occasions). *Id.* ¶ 6.

The City typically receives few comments on its posts. *Id.* ¶ 7. Most of the comments it receives are on topic. *Id.* ¶ 7. The City deletes those that are not related to the article being commented on or that violate any of the other commenting rules. *Id.* ¶ 7. The City's enforcement

DEFENDANT CITY OF SAMMAMISH'S OPPOSITION TO PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION - 2 (CASE NO. 2:21-cv-01264 MJP)

SUMMIT LAW GROUP, PLLC
315 FIFTH AVENUE S., SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone: (206) 676-7000
Fax: (206) 676-7001

1    of its rules is viewpoint neutral – it deletes off-topic comments regardless of the substance of the

2    comment or whether the City agrees or disagrees with the viewpoint being expressed.  *Id.* ¶ 7.

3         The comments that are posted to the City's Facebook page are immediately preserved by

4    ArchiveSocial, a third-party archiving service.  Decl. of Robert Sydnor ("Sydnor Decl.") ¶ 2.

5    ArchiveSocial uses a computer program to read the data from the City's Facebook page,

6    preserving all posts and comments on the page immediately after they are posted.  *Id.* ¶ 3.  The

7    ArchiveSocial program periodically attempts to access comments that it has already preserved in

8    order to ascertain whether they have been hidden, edited, or deleted, and, if so, applying an

9    associated "tag" to the comment.  *Id.*  The tag is only applied on the ArchiveSocial platform and is

10    not visible when directly accessing Facebook.  Wu Decl. ¶ 8.

11        A "deleted" tag applied by ArchiveSocial does not necessarily mean that the comment was

12    actually deleted from Facebook.  Sydnor Decl. ¶ 4.  There are several reasons why ArchiveSocial

13    might apply a "deleted" tag to a comment.  Relevant here, formerly public comments that are

14    rendered inaccessible through a change in a user's privacy settings or a disabling of the user's

15    account will result in an ArchiveSocial "deleted" tag.  *Id.* ¶ 7.  Importantly, comments that are

16    actually deleted from Facebook (as opposed to ones that are simply inaccessible to the public for

17    one of the above reasons) are permanently deleted from Facebook's servers and backup systems,

18    meaning that the comment can never again be retrieved or restored by anyone.  *Id.* ¶ 6; Decl. of

19    Jesse L. Taylor in Opp'n to Pls.' Mot. for P.I., Ex. A.[1]

20    **B.    The Plaintiffs' Comments.**

21        Most of the comments Plaintiffs assert were deleted by the City were, in fact, never

22    deleted by anyone.  To the contrary, most of them remain on the City's Facebook page, viewable

23    by Plaintiffs and the rest of the public.  Instead of checking on Facebook to see whether their

24    comments were deleted, Plaintiffs appear to have instead relied exclusively on the "deleted" tags

25

26        [1] *See also* https://www.facebook.com/help/121995105053180?helpref=search&query=recover%20delete
     d%20post&search_session_id=7be4b79314e2473855db7de29f5fbd88&sr=3 (last accessed October 26, 2021).

DEFENDANT CITY OF SAMMAMISH'S OPPOSITION TO
PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION - 3
(CASE NO. 2:21-cv-01264 MJP)

SUMMIT LAW GROUP, PLLC
315 FIFTH AVENUE S., SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone:  (206) 676-7000
Fax:  (206) 676-7001

applied by ArchiveSocial and which Plaintiffs saw in the records they received from the City in response to their Public Records Act requests. *See* Kimsey Decl. ¶¶ 5-12; Freudenberg Decl. ¶ 5.

Upon being retained, outside counsel for the City specifically notified Plaintiffs' attorney that comments were still visible. On October 5, the City's attorney emailed Mr. Shaeffer:

> I have not had a chance to do anything other than briefly review your Complaint and do a quick search of the City's Facebook page. I note that the few comments of your clients, as referenced in your Complaint, that I searched for are visible to me. Have you checked for yourself?

Decl. of Jessica Goldman in Opp'n to Pls.' Mot. for P.I. ("Goldman Decl."), Ex. 1. While Mr. Shaeffer responded to other issues raised in the email, he did not answer the question posed. The City's attorney further emailed Mr. Shaeffer: "Were you able to locate the comments on the City's FB page?" *Id.* Mr. Shaeffer never responded to either inquiry, Goldman Decl. ¶ 2, and, plainly, Plaintiffs never withdrew or amended their Complaint or their preliminary injunction motion.

The City did delete several of Plaintiffs' other comments that violated the rules.

### 1. Plaintiffs' City Council Meeting Comments

Plaintiffs have identified a total of 59 comments on City Council meetings that they allege have been improperly deleted by the City. Dkt #6, Decl. of Sarah Kimsey in Supp. of Mot. for P.I. ("Kimsey Decl."), Exs. 1-8; Freudenberg Decl., Ex. 1. Of these 59 comments, **56 remain visible** on the City's Facebook page today. Wu Decl. ¶¶ 10-17, Exs. A-H. These 56 comments were never deleted by anyone – rather, they were simply tagged as "deleted" by ArchiveSocial on the ArchiveSocial system. *See* Sydnor Decl. at ¶¶ 6-8.

All of these 59 comments identified by Plaintiffs were either posted by Ms. Kimsey or by Ms. Freudenberg in response to a comment by Ms. Kimsey. Kimsey Decl., Exs. 1-8; Freudenberg Decl., Ex. 1; Compl. ¶¶ 4.6, 4.7, 4.9-4.15. ArchiveSocial has confirmed that **nearly all** of Ms. Kimsey's comments on the City's Facebook page were tagged as "deleted" by ArchiveSocial at approximately the same time. Sydnor Decl. ¶¶ 7-8. This strongly suggests that Ms. Kimsey's

DEFENDANT CITY OF SAMMAMISH'S OPPOSITION TO
PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION - 4
(CASE NO. 2:21-cv-01264 MJP)

SUMMIT LAW GROUP, PLLC
315 FIFTH AVENUE S., SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone: (206) 676-7000
Fax: (206) 676-7001

privacy settings on her own Facebook account were changed, or her account was disabled at some time, making her comments temporarily inaccessible to the public.  *Id.*  As a result, ArchiveSocial tagged the comments as "deleted" on its own system.  *Id.*  Ms. Freudenberg's comments, which were all replies to Ms. Kimsey's comments, would have also been tagged as "deleted" by ArchiveSocial as a result of the disabling of Ms. Kimsey's Facebook account.  Sydnor Decl. ¶¶ 7-8.  All of Ms. Freudenberg's allegedly "deleted" comments on these City Council meetings remain visible on the City's Facebook page today.  Wu Decl. ¶¶ 10, 14, 17 & Exs. A, E, H.

None of the 56 comments that remain on the City's Facebook page were ever deleted.  *See* Sydnor Decl. ¶ 6.  Many of them – if not most – are highly critical of the City.  For example, Ms. Kimsey commented that "we need to fire these folks on council who will be up for re-election next year," complained that "[t]his city manager is useless," and accused the City of being "unethical." Wu Decl., Exs. F, H.  Ms. Freudenberg commented that the City Council "struggle[s] to do the right thing," and asserted that the it was "biased" and not "prepared to act" on federal funding related to the COVID-19 pandemic.  *Id.*, Ex. E.  All of these critical comments remain today.  *Id.*

As for the three comments associated with the City Council meetings that are not on the City's Facebook page, they were not deleted by the City.  Wu Decl. ¶ 18.  These three comments were all made by Ms. Kimsey and are largely duplicative of other comments she made.  *See* Kimsey Decl., Exs. 1, 3, 8.  It is not possible to determine who deleted them or when they were deleted.  Sydnor Decl. ¶ 6.  It is possible that Ms. Kimsey deleted the comments herself.  It is also possible that Facebook deleted the comments because they violated its community standards.[2]  Either way, these comments were **not** deleted by the City.  Wu Decl. ¶ 18.

### 2.    Plaintiffs' Off-Topic Comments

Other than the comments on the City Council meetings – nearly all of which remain on the City's Facebook page – Plaintiffs have identified approximately 12 other comments that they

---

[2] *See* https://transparency.fb.com/policies/community-standards/?from=https%3A%2F%2Fwww.facebook.com%2Fcommunitystandards (last visited October 26, 2021).

DEFENDANT CITY OF SAMMAMISH'S OPPOSITION TO
PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION - 5
(CASE NO. 2:21-cv-01264 MJP)

Summit Law Group, PLLC
315 Fifth Avenue S., Suite 1000
Seattle, Washington 98104-2682
Telephone:  (206) 676-7000
Fax:  (206) 676-7001

allege the City improperly deleted.  Dkt #7, Decl. of Tarul Tripathi in Supp. of Pls.' Mot. for P.I. ("Tripathi Decl.") ¶3 & Ex. 2; Freudenberg Decl., Exs. 3-10; Compl. ¶¶ 4.18, 4.21-4.25.  All of these comments by Plaintiffs violated the City's commenting rules and were removed by the City.

On February 11, 2021, the City shared a post by the Sammamish Police Foundation concerning applications for the Sammamish Police Explorers.  The Explorer Program is a volunteer program for teenagers and young adults interested in a career in law enforcement.[3]  Ms. Tripathi commented on that post, stating "This is disturbing.  It's Black History Month.  The Sammamish Police Foundation continues to use a symbol indicative of support/solidarity with white supremacist groups.  Do better."  Tripathi Decl., Ex. 2.  She then posted a link to an NPR article concerning a decision by the Montgomery County (Minnesota) Executive to prohibit Montgomery County police officers from displaying the "thin blue line" flag in public.  *Id.*

The City determined that Ms. Tripathi's comment was not "related to the particular article being commented on" and therefore in violation of the City's rules.  Accordingly, the City deleted it (and, as a result of how Facebook functioned at the time, the comments in response to that particular comment).  Wu Decl. ¶ 20.  Ms. Tripathi then reposted similar versions of her deleted comment, which the City also removed.  *Id.*  The City explained to Ms. Tripathi that it "welcomes and encourages residents to actively participate in the City's online community" but that "content that violates the rules is subject to immediate removal from the site."  Tripathi Decl., Ex. 3.  The City informed her that her comment was "not related to the particular article being commented on" because the post concerned "the Sammamish Police Explorers accepting applications," whereas her comment concerned "the Sammamish Police Foundation's use of the thin blue line flag."  *Id.*[4]

---

[3] *See* https://www.sammamish.us/government/departments/police/sammamish-police-explorers/ (last visited October 26, 2021).

[4] The City's Communications team, charged with managing the Facebook page, is comprised of two women of color both of whom agree personally with Ms. Tripathi's stated view.  That did not change the fact that her comment was off-topic and violated the City's viewpoint-neutral commenting rules and, hence, was removed.  Wu Decl. ¶ 20.

SUMMIT LAW GROUP, PLLC
315 FIFTH AVENUE S., SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone:  (206) 676-7000
Fax:  (206) 676-7001

1    Beginning in April 2021 and continuing through July 2021, Ms. Freudenberg began

2    posting comments on the City's Facebook posts that were blatantly unrelated to the content of the

3    City's posts.  She posted a total of nine off-topic comments that were removed by the City.

4    Freudenberg Decl., Exs. 3-10.  Each is addressed below.

5    On April 27, 2021, the City posted information about available dates and times for Covid-

6    19 vaccination appointments.  Ms. Freudenberg responded to this post with a spam comment

7    about the City's use of federal funds and a solicitation to the public to fill out a survey to "develop

8    new policies and programs to mitigate commercial lease arrears and help small businesses."

9    Freudenberg Decl., Ex. 3.  The City determined that Ms. Freudenberg's comment was not related

10    to the particular post to which she was commenting (Rule 1).  Wu Decl. ¶ 22.  Accordingly, the

11    City deleted the comment.  *Id.*  After Ms. Freudenberg's spam comment was deleted, she reposted

12    a link to the same survey as a comment to the same post.  Freudenberg Decl., Ex. 3 at 5.  Ms.

13    Freudenberg's comment again violated the City's rule prohibiting off-topic comments.  This spam

14    comment also was deleted by the City.  Wu Decl. ¶ 22.

15    On April 28, 2021, the City posted information raising awareness about distracted driving.

16    Ms. Freudenberg responded to this post with a comment identical to the spam she had posted the

17    day before, again soliciting the public to fill out a survey about commercial lease arrears.

18    Freudenberg Decl., Ex. 4.  She then made a comment about an unrelated City Council meeting and

19    speculated about the City's budget.  *Id.*, Ex. 5.  The City determined that Ms. Freudenberg's

20    comments violated the City's rule prohibiting off-topic comments (Rule 1).  Wu Decl. ¶ 23.

21    Accordingly, the City deleted these comments.  *Id.*

22    The same day, the City posted information about the National Wildlife Federation's

23    Mayors' Monarch Pledge, discussing the decline in monarch butterflies.  Ms. Freudenberg posted

24    a comment in response that concerned affordable housing and property taxes.  Freudenberg Decl.,

25    Ex. 6.  Ms. Freudenberg's comment violated the City's rule prohibiting off-topic comments.  Wu

26

DEFENDANT CITY OF SAMMAMISH'S OPPOSITION TO
PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION - 7
(CASE NO. 2:21-cv-01264 MJP)

SUMMIT LAW GROUP, PLLC
315 FIFTH AVENUE S., SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone:  (206) 676-7000
Fax:  (206) 676-7001

Decl. ¶ 24.  Accordingly, the City deleted this comment.  *Id.*  Notably, Ms. Freudenberg also posted a comment in response to the City's post that concerned monarch butterflies.  This comment was on topic and was therefore not removed by the City.  Freudenberg Decl., Ex. 6.

On April 30, 2021, the City posted information about a local "story walk" event being held in the Lower Sammamish Commons Park.  Ms. Freudenberg responded with a comment about the farmers' market and the adverse impact the pandemic had on local farmers.  Freudenberg Decl., Ex. 7.  The City determined that Ms. Freudenberg's comment had nothing to do with the story walk event and that it therefore violated the City's rule prohibiting off-topic comments.  Wu Decl. ¶ 25.  Accordingly, the City removed this off-topic comment.  *Id.*

In July 2021, the City posted information concerning a traffic alert to let the public know that a traffic light would be down for maintenance.  Ms. Freudenberg replied to this post with a comment about the City's processing of public record requests.  Freudenberg Decl., Ex. 8.[5]  The City determined that Ms. Freudenberg's comment violated the City's rules prohibiting off-topic comments.  Wu Decl. ¶ 26.  Accordingly, the City removed this off-topic comment.  *Id.*

On July 21, 2021, the City posted information about free parking available at Beaver Lake Park for a summer concert.  Ms. Freudenberg responded with a comment asking about parking in the Sammamish Commons for the farmers' market and suggesting that the City was retaliating against farmers.  Freudenberg Decl., Ex. 9.  The City determined that Ms. Freudenberg's comment violated the City's rules prohibiting off-topic comments.  Wu Decl. ¶ 27.  Accordingly, the City removed this off-topic comment.  *Id.*

On July 22, 2021, the City shared a notice from Sammamish Plateau Water, alerting the public that field crews would be conducting sanitary sewer smoke testing the following month.  The post informed the public that the smoke was safe, non-toxic, and would not create a fire hazard.  Freudenberg Decl., Ex. 10.  Ms. Freudenberg responded with a comment complaining

---

[5] Exhibit 8 to the Freudenberg Declaration does not show the full comment that Ms. Freudenberg alleges.

DEFENDANT CITY OF SAMMAMISH'S OPPOSITION TO
PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION - 8
(CASE NO. 2:21-cv-01264 MJP)

SUMMIT LAW GROUP, PLLC
315 FIFTH AVENUE S., SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone:  (206) 676-7000
Fax:  (206) 676-7001

about "the County's 'fix' for the sewer issues" and asking, "when can we expect to see the rest of the videos from the recent hearing on the Town Center." *Id.* The City determined that Ms. Freudenberg's comment violated the City's rules prohibiting off-topic comments. Wu Decl. ¶ 28. Accordingly, the City removed this off-topic comment. *Id.*

In every instance described above, Ms. Freudenberg posted the off-topic comments and then immediately (typically within one minute) took screenshots of her off-topic comments. *See* Freudenberg Decl., Exs. 3-10. Her pattern of posting a barrage of off-topic comments and then taking screenshots of those comments suggests that she knew her comments would be deleted by the City. Ms. Freudenberg was intentionally violating the City's reasonable posting rules to bait the City and derail the information that the City was conveying to the public.

The City removes comments from its Facebook page that violate its rules, regardless of the identity of the person leaving the off-topic comment. Wu Decl. ¶ 7. The City has removed off-topic comments from individuals other than the Plaintiffs. *Id.* When Plaintiffs have left on-topic comments on the City's Facebook page, the City has left those comments untouched – even when the comments have been highly critical of the City. *Id.* ¶¶ 7, 29 & Exs. I-K.

**3.  Plaintiffs Continue to Comment on the City's Facebook Page.**

All three Plaintiffs have continued to comment on the City's Facebook page even after the City removed their rule-breaking comments.[6] For example, on June 18, 2020, Ms. Kimsey commented that she cannot "hold the government accountable" because "the entire narrative is controlled" by the City and that the City has been "[i]ncredibly irresponsible." Wu Decl. ¶ 29 & Ex. I. On April 27, 2021, Ms. Tripathi commented that a City Council Member "made overtly racist comments during his interview" and complained that the City "is involved in multiple law suits surrounding our growth management practices." *Id.* ¶ 29 & Ex. J. On August 11 and August 24, 2021, Ms. Freudenberg commented that the City's emergency alert system is inconsistent and

---

[6] As discussed *supra*, the City did not remove any of comments by Ms. Kimsey identified by Plaintiffs.

DEFENDANT CITY OF SAMMAMISH'S OPPOSITION TO
PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION - 9
(CASE NO. 2:21-cv-01264 MJP)

SUMMIT LAW GROUP, PLLC
315 FIFTH AVENUE S., SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone:  (206) 676-7000
Fax:  (206) 676-7001

1    that the City poorly managed a heatwave response during the summer, and she complained that the

2    City Council "is blocking multifamily … senior housing." *Id.* ¶ 29 & Ex. K.  All of these

3    comments by Plaintiffs (and many other comments not mentioned here) were highly critical of the

4    City.  Nevertheless, because the comments were on topic and did not violate the City's rules for

5    commenting, the City did not delete these critical comments.  So long as their comments are not in

6    violation of the City's rules, the City does not delete comments from the Plaintiffs or anyone else.

7                    **III.    ARGUMENT AND AUTHORITY**

8    **A.    Preliminary Injunction Standard**

9            "[A] plaintiff seeking a preliminary injunction must establish: (1) that he is likely to

10   succeed on the merits, (2) that he is likely to suffer irreparable harm in the absence of preliminary

11   relief, (3) that the balance of equities tips in his favor, and (4) that an injunction is in the public

12   interest." *Edge v. City of Everett*, 929 F.3d 657, 663 (9th Cir. 2019) (quoting *Winter v. NRDC*,

13   555 U.S. 7, 20 (2008)) (cleaned up), *cert. denied*, __ U.S. __, 140 S. Ct. 1297 (2020).  "Likelihood

14   of success on the merits is the most important factor; if a movant fails to meet this threshold

15   inquiry, we need not consider the other factors." *Id.* (cleaned up).  "When the government is a

16   party, these last two factors merge." *Drakes Bay Oyster Co. v. Jewell*, 747 F.3d 1073, 1092 (9th

17   Cir. 2014).

18           Unlike a prohibitory injunction which preserves the status quo pending a determination on

19   the merits, a mandatory injunction orders a party to take action.  "Mandatory injunctions are

20   particularly disfavored and generally 'are not granted unless extreme or very serious damage will

21   result and are not issued in doubtful cases or where the injury complained of is capable of

22   compensation in damages.'" *Herbert v. Balducci*, No. C12-1429-MJP, 2013 WL 5176766, *2

23   (W.D. Wash. Sep. 11, 2013) (quoting *Anderson v. United States*, 612 F.2d 1112, 1114-15 (9th Cir.

24   1980)).  A motion for a mandatory injunction is subject to a heightened standard.  *Murinko v.*

25   *Strange*, No. C19-943 MJP, 2019 WL 11769103, *2 (W.D. Wash. Oct. 10, 2019).  Such an

26

DEFENDANT CITY OF SAMMAMISH'S OPPOSITION TO
PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION - 10
(CASE NO. 2:21-cv-01264 MJP)

SUMMIT LAW GROUP, PLLC
315 FIFTH AVENUE S., SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone:  (206) 676-7000
Fax:  (206) 676-7001

1    injunction "should not be issued unless the facts and the law clearly favor the moving party."

2    *Dahl v. HEM Pharm. Corp.*, 7 F.3d 1399, 1403 (9th Cir. 1993). "A strong showing is required

3    both as to the likelihood of success on the merits and the balance of harms." *Requa v. Kent School*

4    *Dist. No. 415*, 492 F. Supp. 2d 1272, 1277 (W.D. Wash. 2007).

5          In *Murinko*, this Court considered and denied a motion for a mandatory injunction.

6    Although the Court concluded that the plaintiff had demonstrated a likelihood of success on the

7    merits *and* the balance of the equities tipped in plaintiff's favor, the absence of irreparable harm

8    was decisive. Due to plaintiff's inability to satisfy only one of the preliminary injunction factors,

9    this Court ruled that he had "not met the heightened standard required for a mandatory preliminary

10   injunction[.]" *Murinko*, 2019 WL 11769103 at *2.

11         Here, Plaintiffs fail to satisfy any of the preliminary injunction factors necessary to obtain

12   the requested mandatory injunction.

13   **B.    Plaintiffs Are Unlikely to Prevail on the Merits.**

14         **1.    The City's Facebook Page is a Limited Public Forum.**

15         Analysis of the merits must begin with a determination of the kind of forum at issue, which

16   Plaintiffs ignore. *Amalgamated Transit Union Local 1015 v. Spokane Transit Auth.*, 929 F.3d

17   643, 650 (9th Cir. 2019); *Garrett v. City of Seattle*, No. C10-00094 MJP, 2010 WL 4236946, *3

18   (W.D. Wash. Oct. 20, 2010). It is not enough to state, as Plaintiffs do, that the Facebook page is a

19   "public forum." Mot. for P.I. at 7:13. "[T]he government is permitted to exercise control over the

20   public's use of government-owned property for expressive purposes, and the degree of control

21   permitted depends on the nature of the property and the speech restrictions imposed thereon."

22   *Hotel Emps. & Rest. Emps. Union et al v. City of N.Y. Dep't of Parks & Recreation ("Hotel*

23   *Employees")*, 311 F.3d 534, 544 (2nd Cir. 2002). The type of public forum, in turn, determines

24   the level of scrutiny a court applies in evaluating speech regulations in the forum. *Am. Civil*

25   *Liberties Union of Nev. v. City of Las Vegas ("ACLU")*, 333 F.3d 1092, 1098 (9th Cir. 2003).

26

DEFENDANT CITY OF SAMMAMISH'S OPPOSITION TO
PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION - 11
(CASE NO. 2:21-cv-01264 MJP)

SUMMIT LAW GROUP, PLLC
315 FIFTH AVENUE S., SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone: (206) 676-7000
Fax: (206) 676-7001

1     Public fora differ considerably.  At one end are public streets and parks "which have

2  immemorially been held in trust for the use of the public and, time out of mind, have been used for

3  purposes of assembly, communicating thoughts between citizens, and discussing public

4  questions."  *Pleasant Grove City, Utah v. Summum*, 555 U.S. 460, 469 (2009) (cleaned up).

5  "Opening an instrumentality of communication 'for indiscriminate use by the general public'

6  creates a public forum."  *Knight First Amendment Inst. at Columbia Univ. v. Trump*, 928 F.3d 226,

7  237 (2019) (quoting *Perry Educ. Ass'n v. Perry Local Educators' Ass'n*, 460 U.S. 37, 47 (1984)),

8  *judgt. vacated as moot*, 141 S. Ct. 1220 (2021).  It is in a traditional public forum that First

9  Amendment protection of speech is at its peak.  Such, for example, was the Twitter account of

10  President Donald Trump which he made "accessible to the public without limitation."  *Id.*

11     Next are designated public fora.  The government creates such a forum "when it intends to

12  make property that hasn't traditionally been open to assembly and debate generally available for

13  expressive use by the general public or by a particular class of speakers."  *Seattle Mideast*

14  *Awareness Campaign v. King Cnty. ("SeaMAC")*, 781 F.3d 489, 496 (9th Cir. 2015) (cleaned up).

15  "The defining characteristic of a designated public forum is that it's open to the same indiscrimi-

16  nate use, and almost unfettered access, that exists in a traditional public forum."  *Id.* (cleaned up).

17     At the other end are limited public or nonpublic fora where the government "may create a

18  forum that is limited to use by certain groups or dedicated solely to the discussion of certain

19  subjects."  *Pleasant Grove City*, 555 U.S. at 470.  "The necessities of confining a forum to the

20  limited and legitimate purposes for which it was created may justify the State in reserving it for

21  certain groups or for the discussion of certain topics."  *Rosenberger v. Rector & Visitors of Univ.*

22  *of Va.*, 515 U.S. 819, 829 (1995).

23     "[W]hen the government intends to grant only selective access, by imposing either

24  speaker-based or subject-matter limitations, it has created a limited public forum."  *SeaMAC*, 781

25  F.3d at 497 (cleaned up).  The government's intent is measured in several ways.  First, when

26

DEFENDANT CITY OF SAMMAMISH'S OPPOSITION TO
PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION - 12
(CASE NO. 2:21-cv-01264 MJP)

SUMMIT LAW GROUP, PLLC
315 FIFTH AVENUE S., SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone:  (206) 676-7000
Fax:  (206) 676-7001

government creates a public forum with "fixed guidelines that impose[] categorical subject-matter limitations," that indicates the intent to create merely a limited public forum. *Id.* at 497-98. Those subject-matter limitations show that the government "intended to grant only selective access, rather than almost unfettered access" that is the hallmark of traditional and designated public fora. *Id.* at 498 (cleaned up). Second, the government's routine enforcement of the speech limitations it has established further confirms a limited public forum. *Id.* at 497.

In a limited public forum in the physical world, a government entity may limit "its meeting to discussion of specified agenda items and in imposing reasonable restrictions to preserve the civility and decorum necessary to further the forum's purpose of conducting public business." *Steinburg v. Chesterfield Cnty. Planning Comm'n*, 527 F.3d 377, 385 (4th Cir. 2008). "Allowing members of the public to speak unrestricted in a limited public forum risks impinging on the First Amendment rights of other would-be participants." *Stevens v. Town of Snow Hill, N.C.*, No. 4:19-CV-156-D, 2021 WL 2345353, *4 (E.D.N.C. June 8, 2021), *appeal filed* (4th Cir. June 16, 2021).

The same is true in the virtual world. By its terms, Sammamish's Facebook page is limited to the discussion of certain topics. Among the excluded topics are those that are "not related to the particular article being commented on," those that "support[] or oppose[] political candidates or ballot propositions," and those that "discuss[] or encourage[] illegal activity." Freudenberg Decl., Ex. 1. That some political speech is allowed, such as, for example, on-topic comments, does not alter the fact that the City created a limited public forum. *SeaMAC*, 781 F.3d at 499 (**rejecting** the view "that if the government opens a forum and is willing to accept political speech, it has necessarily signaled an intent to create a designated public forum"); *Garnier v. Poway Unified School Dist.*, No. 17-cv-2215-W(JLB), 2019 WL 4736208, *11 (S.D. Cal. Sep. 26, 2019) ("where courts have found a limited public forum, the government had explicit policies or restrictions governing the groups that could 'speak' or the topics that could be discussed"). The First Amendment does not put municipalities to this "all-or-nothing choice." *SeaMAC*, 781 F.3d at 499.

DEFENDANT CITY OF SAMMAMISH'S OPPOSITION TO
PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION - 13
(CASE NO. 2:21-cv-01264 MJP)

SUMMIT LAW GROUP, PLLC
315 FIFTH AVENUE S., SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone: (206) 676-7000
Fax: (206) 676-7001

1   Sammamish's Facebook page, like that of most governments, is a limited public forum.

2   *See, e.g., Charudattan v. Darnell*, 834 Fed. Appx. 477, 480 (11th Cir. 2020) (sheriff's office

3   Facebook page); *Davis v. Colerain Twp.*, ___ F.3d ___, 2021 WL 3271792, *2 (S.D. Ohio July 30,

4   2021) (police department Facebook page); *Davison v. Plowman*, 247 F. Supp. 3d 767, 776 (E.D.

5   Va. 2017) (Commonwealth's Attorney Facebook page), *aff'd*, 715 Fed. Appx. 298 (4th Cir. 2018),

6   *reh'g & reh'g en banc denied* (Apr. 24, 2018).  By the very definition of its commenting rules, the

7   City is **not** "treating it as 'the modern public square.'"  Mot. for P.I. at 10:13.

### 2. The City's Facebook Page Satisfies the More Lenient Test for Limited Public Forums.

9   Plaintiffs contend that the City of Sammamish's commenting rules must be subjected to

10  strict scrutiny.  *Id.* at 5:26-27.  Not so.  *Good News Club v. Milford Cent. School*, 533 U.S. 98, 106

11  (2001) ("If the forum is a traditional or open public forum, the State's restrictions on speech are

12  subject to stricter scrutiny than are restrictions in a limited public forum."); *Am. Freedom Defense*

13  *Initiative v. King Cnty.*, 904 F.3d 1126, 1130 (9th Cir. 2018) ("strict scrutiny does not apply" in a

14  limited public forum).

15  "When the State establishes a limited public forum, the State is not required to and does

16  not allow persons to engage in every type of speech.  The State may be justified in reserving its

17  forum for certain groups or for the discussion of certain topics."  *Good News Club*, 533 U.S. at

18  106.  Thus, in approving limitations on speech during a city council meeting, the Ninth Circuit has

19  explained:

> A more fundamental flaw in plaintiffs' position is that their first amendment
> arguments do not take account of the nature of the process that this ordinance
> is designed to govern.  We are dealing not with words uttered on the street to
> anyone who chooses or chances to listen; we are dealing with meetings of the
> Norwalk City Council, and with speech that is addressed to that Council.
> Principles that apply to random discourse may not be transferred without
> adjustment to this more structured situation.

24  *White v. City of Norwalk*, 900 F.2d 1421, 1425 (9th Cir. 1990).

DEFENDANT CITY OF SAMMAMISH'S OPPOSITION TO
PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION - 14
(CASE NO. 2:21-cv-01264 MJP)

SUMMIT LAW GROUP, PLLC
315 FIFTH AVENUE S., SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone:  (206) 676-7000
Fax:  (206) 676-7001

1    Indeed, the government "may police the boundaries of a limited public forum it has

2    created." *Davison*, 247 F. Supp. 3d at 776. In a limited public forum, government restrictions on

3    speech need only satisfy "a more lenient standard." *ACLU*, 333 F.3d at 1098 (cleaned up).

4    "[C]ontent-based restrictions are permissible, as long as they are reasonable and viewpoint

5    neutral." *SeaMAC*, 781 F.3d at 496; *accord Pleasant Grove City*, 555 U.S. at 470; *College*

6    *Republicans of the Univ. of WA v. Cause*, No. C18-189-MJP, 2018 WL 804497, *2 (W.D. Wash.

7    Feb. 9, 2018).

8    Because the City's commenting rules are both reasonable and viewpoint-neutral, they

9    satisfy the "more lenient standard" that applies here. This Court's independent review of the

10    record will confirm that the comments deleted by the City of Sammamish were prohibited by the

11    City's commenting rules. *Amalgamated Transit Union*, 929 F.3d at 651.

12    ### a.    The Challenged Commenting Rules.

13    The City of Sammamish, like many governments, has opened up a Facebook page for the

14    City to inform citizens about public safety and other important government information. Wu

15    Decl. ¶ 3; Mot. for P.I. at 3:9-10 ("The City uses the page to post items relevant to the City of

16    Sammamish, such as updates on road conditions, zoning development plans, and events."). As is

17    standard with government Facebook pages, only the City may "post" on its page. Wu Decl. ¶ 3;

18    Mot. for P.I. at 9:22 ("The government or its agents control what is posted"). Members of the

19    public are permitted to "comment" on the City's posts, subject to the specified rules of

20    engagement. Wu Decl. ¶¶ 3-4; Mot. for P.I. at 9:24-25 ("Facebook has an interactive 'comment'

21    section below posts where members of the general public can comment"). Undisputedly, the

22    City's commenting rules are "content based," Mot. for P.I. at 11:4, as always is allowed in a

23    limited public forum. *SeaMAC*, 781 F.3d at 502.

24    Plaintiffs challenge four "subsections" of the City's commenting rules: the use of the word

25    "inappropriate" in the rules' introduction as well as Rules 1, 3, and 5. Mot. for P.I. at 3:3, 12:4-6.

26

DEFENDANT CITY OF SAMMAMISH'S OPPOSITION TO
PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION - 15
(CASE NO. 2:21-cv-01264 MJP)

SUMMIT LAW GROUP, PLLC
315 FIFTH AVENUE S., SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone: (206) 676-7000
Fax: (206) 676-7001

1   The commenting rules begin with a preamble: "Inappropriate and prohibited content subject to

2   immediate removal from the site and includes content: …." Freudenberg Decl., Ex. 1. Following

3   this introduction, the City sets forth the 11 rules that delineate what is "inappropriate and

4   prohibited content" that will be removed. *Id.* In Rule 1, comments on the City's posts must be

5   "related to the particular article being commented on," *id.*, "a common restriction among limited

6   public forums." *Davison*, 247 F. Supp. 3d at 777. In Rule 3, comments that "support[] or

7   oppose[] political candidates or ballot propositions" are prohibited. Freudenberg Decl., Ex. 1.

8   Pursuant to Rule 5, comments may not "discuss[] or encourage[] illegal activity." *Id.*

9   **b.    The City's Commenting Rules are Reasonable.**

10      The Ninth Circuit has emphasized that it "do[es] not apply a least restrictive means test in

11  this context. 'The Government's decision to restrict access to a nonpublic forum need only be

12  *reasonable*; it need not be the most reasonable or the only reasonable limitation.'" *SeaMAC*, 781

13  F.3d at 501 (quoting *Cornelius*, 473 U.S. at 808). The reasonableness of a government restriction

14  is "assessed in light of the purpose of the forum and all the surrounding circumstances."

15  *Cornelius*, 473 U.S. at 809. The restrictions pass muster if they "are 'reasonably related' to

16  maintaining the environment that the government has deliberately created." *Hotel Employees*, 311

17  F.3d at 554 (quoting *Int'l Soc'y for Krishna Consciousness, Inc. v. Lee*, 505 U.S. 672, 689 (1992)).

18      In *SeaMAC*, the Ninth Circuit found a King County Metro restriction on bus advertising to

19  be reasonable. Metro excluded advertising that "'is so objectionable under contemporary

20  community standards as to be reasonably foreseeable that it will result in harm to, disruption of, or

21  interference with the transportation system.'" *SeaMAC*, 781 F.3d at 500. The Court found this

22  exclusion to be properly consistent with allowing only advertising that was compatible with

23  Metro's purpose of providing safe and reliable public transportation. *Id.* "Restrictions on speech

24  that will foreseeably disrupt the intended function of government property have generally been

25  held reasonable in limited public forums." *Id.*

26

DEFENDANT CITY OF SAMMAMISH'S OPPOSITION TO
PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION - 16
(CASE NO. 2:21-cv-01264 MJP)

SUMMIT LAW GROUP, PLLC
315 FIFTH AVENUE S., SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone: (206) 676-7000
Fax: (206) 676-7001

1    In *Davis*, the court explained that a government policy prohibiting the posting of any

2 videos on a government Facebook page was reasonable.  "Followers are not permitted to post

3 videos because the police department wants to limit comments to statements made by its

4 followers.  This ensures followers can quickly access the information posted without irrelevant

5 videos detracting from the information the Colerain Police are trying to disseminate."  *Davis*, 2021

6 WL 3271792 at *4; *see also White*, 900 F.2d at 1425 (In a city council meeting, "the Council does

7 not violate the first amendment when it restricts public speakers to the subject at hand.");

8 *Charudattan*, 834 Fed. Appx. at 480 (policy prohibiting off-topic posts and links to other third-

9 party sites or advertisements was reasonable); *Stevens*, 2021 WL 2345353 at *5 (in physical

10 limited public forum, the government "could restrict [citizen's] speech to the relevant topic").

11    Likewise, the City of Sammamish's commenting restrictions are reasonable.  The purpose

12 of the Facebook page is for the City to disseminate information to the public.  Wu Decl. ¶ 3.  Off-

13 topic comments, debates about political candidates and ballot initiatives, and discussions about

14 illegal activity are naturally likely to "hijack" the City's ability to effectively disseminate

15 important information to its citizens.  *Id.* ¶¶ 4-5. Off-topics commenting restrictions are

16 "reasonably related – indeed integral – to the forum's purpose."  *Davison*, 247 F. Supp. 2d at 777.

17 Such commenting rules "contemplate[] that [the government] would set the agenda, and that

18 interested parties would participate in a moderated discussion regarding the selected topics.  The

19 'clearly off topic' restriction served to limit discussion to those matters presented and thus to

20 preserve the forum for its intended purpose."  *Id.*

21        **c.    The City's Commenting Rules are Definite and Objective.**

22    A reasonable subject-matter exclusion also must be "'based on a standard that is definite

23 and objective.'"  *College Republicans of UW*, 2018 WL 804497 at *2 (quoting *SeaMAC*, 781 F.3d

24 at 496).  Plaintiffs contend that the four challenged provisions are "ambiguous and subjective, thus

25

26

DEFENDANT CITY OF SAMMAMISH'S OPPOSITION TO
PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION - 17
(CASE NO. 2:21-cv-01264 MJP)

SUMMIT LAW GROUP, PLLC
315 FIFTH AVENUE S., SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone:  (206) 676-7000
Fax:  (206) 676-7001

1  vesting the City and its agents with unfettered discretion to approve or disapprove free speech

2  messages." Mot. for P.I. at 6:9-10. Plaintiffs are mistaken.

3      The Ninth Circuit and the Supreme Court "recognize that condemned to the use of words,

4  we can never expect mathematical certainty from our language. To put a finer point on it: perfect

5  clarity and precise guidance have never been required even of regulations that restrict expressive

6  activity." *Edge*, 929 F.3d at 664. Rather, language must "'give the person of ordinary intelligence

7  a reasonable opportunity to know what is prohibited, so that he may act accordingly.'" *Id.*

8  (quoting *Grayned v. City of Rockford*, 408 U.S. 104, 108 (1972)). Moreover, "otherwise

9  imprecise terms may avoid vagueness problems when used in combination with terms that provide

10 sufficient clarity." *Id.* at 665 (cleaned up). So, for example, the use of the term "lewd act" could

11 be understood by a person of ordinary intelligence, reading the ordinance in which the term

12 appeared in its entirety including specific intimate body parts that were to be covered. *Id.*

13 Likewise, a regulation that prohibited police officers "from using social media in a matter that

14 would cause embarrassment to or discredit the Department in any way," though "not a perfect

15 model of clarity," was not unconstitutionally vague. *Hernandez v. City of Phoenix*, __ F. Supp. 3d

16 ___, 2021 WL 2138769, *1, *4 (D. Ariz. 2021), *appeal filed* (9th Cir. June 14, 2021). And King

17 County Metro's exclusion of advertising that "'is so objectionable under contemporary community

18 standards as to be reasonably foreseeable that it will result in harm to, disruption of, or

19 interference with the transportation system,'" was sufficiently definite and objective. *SeaMAC*,

20 781 F.3d at 500. *Id.* This was **not** a "standardless standard." *Id.*

21     The four challenged provisions of the City's commenting rules more than adequately

22 apprise a person of ordinary intelligence as to what is prohibited, so that he or she may act

23 accordingly. Moreover, they also set forth a sufficiently precise standard for the City to employ in

24 evaluating comments on its Facebook page. Rule 1's "requirement that participants in a limited

25 public forum stick to a prescribed topic" is neither ambiguous nor subject to challenge. *Davison*,

26

SUMMIT LAW GROUP, PLLC
315 FIFTH AVENUE S., SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone: (206) 676-7000
Fax: (206) 676-7001

247 F. Supp. 2d at 778.  Indeed, the "failure to effectively moderate a public discussion may be as deleterious to dialogue in such a forum as censorship."  *Id.*  Rule 3's prohibition on comments that "support[] or oppose[] political candidates or ballot propositions" also is precise and objective and applies to **any** candidate and **any** ballot initiative.  While Plaintiffs do not like this restriction, they do not contend that it is indefinite or subjective.  Mot. for P.I. at 11:11-14.  Likewise, Rule 5's restriction on "discuss[ing] or encourage[ing] illegal activity" is definite and objective.  Plaintiffs do not dispute this, though they dislike Rule 5 too.  *Id.* at 11:14-16.

Finally, the word "inappropriate" in the commenting rule's preamble is amply explained by the precise rules that follow and is not "a completely subjective restriction." *Id.* at 11:6-7.  The City does not delete comments for any reason other than those specified in the rules.  Wu Decl. ¶ 4.  This one word, separated by Plaintiffs from its context, must – by logic and law – be read along with the comprehensive language of the rules which plainly identify the kind of speech that is not intended for this limited public forum.  *Edge*, 929 F.3d at 665.

### d.    The City's Commenting Rules are Viewpoint-Neutral.

In a limited government forum, "[g]overnment is free to impose a blanket exclusion of certain types of speech," so long as the exclusion is viewpoint-neutral.  *Hotel Employees*, 311 F.3d at 545-46 (cleaned up).  In other words, viewpoint neutrality (which is required) is different from content neutrality (which is not required).  The Supreme Court holds that

> [i]n determining whether the State is acting to preserve the limits of the forum it has created so that the exclusion of a class of speech is legitimate, we have observed a distinction between, on the one hand, content discrimination, which may be permissible if it preserves the purposes of that limited forum, and, on the other hand, viewpoint discrimination, which is presumed impermissible when directed against speech otherwise within the forum's limitations.

*Rosenberger*, 515 U.S. at 829-30.  "A viewpoint neutral restriction is one that does not suppress speech 'merely because public officials oppose the speaker's view.'" *College Republicans of UW*, 2018 WL 804497 at *2 (quoting *SeaMAC*, 781 F.3d at 502).  Consequently, where the government

DEFENDANT CITY OF SAMMAMISH'S OPPOSITION TO
PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION - 19
(CASE NO. 2:21-cv-01264 MJP)

SUMMIT LAW GROUP, PLLC
315 FIFTH AVENUE S., SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone:  (206) 676-7000
Fax:  (206) 676-7001

"has a legitimate, viewpoint-neutral reason for not allowing" speech in a limited public forum, there is no constitutional infirmity. *Davis*, 2021 WL 3271792 at *3.

In *SeaMAC*, the Ninth Circuit approved advertising regulations as facially viewpoint-neutral. 781 F.3d at 501-02. "It excludes all ads – whatever their viewpoint – that may foreseeably result in harm to, disruption of, or interference with the transportation system." *Id.* at 502.

In *Davison*, the District Court addressed a challenge to an "off topic" prohibition on a government Facebook page. The court ruled that "a restriction limiting a forum to discussion of selected topics – a common restriction among limited public forums, *see Perry Educ. Ass'n*, 460 U.S. at 71 n. 7 – is self-evidently viewpoint neutral." 247 F. Supp. 3d at 777.

Plaintiffs claim that the word "inappropriate" in the preamble[7] and the off-topic commenting rule are not viewpoint-neutral because the City applies them. Mot. for P.I. at 11:4-11.[8] They argue that the fact that the "determination" as to whether a comment complies with these two provisions is "made by a government official in their sole discretion – makes this all the more prone to censorship." *Id.* at 12:15-17.[9] Plaintiffs cite no authority for this proposition. The fact that the government determines whether a comment concerns a viewpoint-neutral **subject** that is excluded from a limited public forum is precisely the way the constitutional system is meant to work. *See, e.g., Hotel Employees*, 311 F.3d at 544 ("the government is permitted to exercise control over the public's use of government-owned property for expressive purposes").[10] Here,

---

[7] Complaints as to alleged vagueness of terms of a regulation are immaterial where it is clear from the record that plaintiffs' speech was limited due to their violation of other criteria in the regulation that are not assailed as vague. *Freedom Found. v. Sacks*, No. 3:19-cv-05937-BJR, 2021 WL 1250526, *9 (W.D. Wash. Apr. 5, 2021) ("alleged vagueness of terms such as 'political campaigning' or 'solicitation' are immaterial" where the plaintiffs failed to submit the required application and there was an existing scheduling conflict), *appeal filed* (9th Cir. May 3, 2021). Here, it is plain that all of the deleted comments were removed because they were off-topic, not because they were otherwise "inappropriate."

[8] They do not claim as much in regard to the other two rules.

[9] Plaintiffs' evidence demonstrates that they expected their off-topic comments to be removed by the City as violative of the rules because they took photographs of the off-topic comments immediately upon making them. Freudenberg Decl., Exs. 3-10. They not only had "notice" of the comments' removal, but they were watching for it to happen.

[10] Of course, if there is evidence that a viewpoint-neutral rule is being **applied** in a viewpoint-based manner – which, as discussed below, there is not – that application would not satisfy independent judicial review.

SUMMIT LAW GROUP, PLLC
315 FIFTH AVENUE S., SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone: (206) 676-7000
Fax: (206) 676-7001

1    the "discretion" exercised by the City is limited to determining if one of its viewpoint-neutral rules

2    has been violated, including whether the comment is "related to" the City's post. These are **not**

3    "completely subjective restriction[s]," or subjective at all.  Mot. for P.I. at 11:6-7.

4              e.       **As Applied, the City's Rules Are Viewpoint-Neutral.**

5         The government's application of its viewpoint-neutral rules in a limited public forum is

6    subject to independent judicial scrutiny.  Plaintiffs claim that, as-applied here, the City's

7    commenting rules are viewpoint-based.  This claim fails for lack of any evidentiary support.

8         In *SeaMAC*, the Ninth Circuit rejected an as-applied challenge to Metro's exclusion of ads

9    that might foreseeably result in disruption of the transportation system. 781 F.3d at 502.  The

10   Court held that such a challenge "require[d] evidence that the government intended to suppress

11   expression merely because public officials oppose[d] the speaker's view."  *Id.* at 502 (cleaned up).

12   This was a standard the plaintiff did not meet where Metro had rejected ads on either side of the

13   Israeli-Palestinian conflict.  *Id.*

14        In *Davison*, the District Court rejected an as-applied challenge to application of a Facebook

15   commenting rule.  The government posted an article regarding special prosecutors, intended to

16   increase the public's understanding of the criminal justice process generally.  *Davison*, 247 F.

17   Supp. 3d at 777.  The plaintiff wrote a lengthy comment that did not further any dialogue about

18   the role of special prosecutors but was intended to pressure the government to act on the plaintiff's

19   concern that a school official had perjured himself.  *Id.*  The court found that

20              [W]hile Plaintiff's comment does reference special prosecutors, that aspect of
21              the comment is mere window dressing.  The reference to a special prosecutor
                was simply a hook upon which Plaintiff attempted to hang his frustration that
22              Defendant refused to pursue Plaintiff's claims of perjury.

23   *Id.*  The court found that plaintiff's comment "attempted to hijack the discussion for Plaintiff's

24   ends."  *Id.*  The government's removal of the off-topic comment did not violate the First

25   Amendment.  *Id.*

26

1             Plaintiffs' sole argument on their as-applied challenge is that the City singled out

2    Plaintiffs' critical comments "while allowing complimentary comments to remain." Mot. for P.I.

3    at 2:21-23. As for the latter statement, Plaintiffs do not point to a single "complimentary

4    comment" that violated the City's comment rules that was **not** removed. Turning to the claimed

5    singling out of "critical comments," Plaintiffs concede that **some** of their deleted critical

6    comments did not comply with the commenting rules. *Id.* at 13:23-24 ("The majority of these

7    comments complied with every rule stated in the City's policy."). Moreover, the evidence shows

8    without dispute that virtually all of Plaintiffs' comments have been critical of the City and that the

9    **only** ones that the City has taken down are those that violate the City's commenting rules. *See* Wu

10    Decl. ¶¶ 4, 29 & Exs. I-K. Fifty-six out of the total 71 critical comments identified by Plaintiffs

11    remain on the City's Facebook page because they do not violate the commenting rules. Wu Decl.

12    Exs. A-K. Aside from the comments identified in their Complaint, Plaintiffs have posted **many**

13    other comments highly critical of the City – all of which remain on the City's Facebook page

14    because none violated the City's commenting rules. Wu Decl., Exs. I-K. "This constitutes" **the**

15    **opposite of** "viewpoint discrimination." Mot. for P.I. at 2:23.[11] While Plaintiffs contend without

16    any support that "Defendants only target and delete speech that is critical of the City of

17    Sammamish," *id.* at 6:12-13, they concede that **some** of their deleted comments were **not** critical

18    of the City. *Id.* at 2:7-8 ("the majority of the deleted comments were critical of the Sammamish

19    City Council").

20             Plaintiffs' further claim that the City's standard commenting rules "have chilled" their

21    ability to speak on issues of concern to them, *id.* at 2:25-26, is belied by their own evidence. First,

22    notwithstanding the City's continued adherence to its rules, and the removal of Plaintiffs'

23

24         [11] Plaintiffs complain that the City has not told them "why" their off-topic comments were deleted. Mot. for P.I. at

25    2:8-9. To start with, the City is not required to do so and, for this reason, Plaintiffs offer no authority on this point. Moreover, Plaintiffs' evidence demonstrates their efforts to bait the City with their repeated off-topic comments and to immediately screenshot the to-be-deleted comments. Freudenberg Decl., Exs. 3-10. It is obvious **to Plaintiffs** that the

26    deleted comments are off-topic.

DEFENDANT CITY OF SAMMAMISH'S OPPOSITION TO
PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION - 22
(CASE NO. 2:21-cv-01264 MJP)

SUMMIT LAW GROUP, PLLC
315 FIFTH AVENUE S., SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone:  (206) 676-7000
Fax:  (206) 676-7001

noncompliant comments, they continue to comment.  Wu Decl. ¶ 29.  In fact, no one comments more regularly than they do.  *Id.* ¶ 7.  Second, among many other available venues including the traditional public fora in the City of Sammamish, Plaintiffs have their own Facebook pages where they may post and comment on anything they wish (that does not violate Facebook's rules).

Plaintiffs are not likely to succeed on their claims.  To the contrary, this lawsuit is baseless and a motion for summary judgment will follow.  Because Plaintiffs do not satisfy this "most important factor," the Court need not consider any of the other factors of the preliminary injunction standard.  *Edge*, 929 F.3d at 663.  However, Plaintiffs also cannot satisfy those factors.

## C.    Plaintiffs Have Failed to Establish a Likelihood of Irreparable Harm.

Plaintiffs also have not shown a likelihood of any harm, irreparable or otherwise.  "The Supreme Court has made clear that the mere possibility of future injury is not sufficient to support the issuance of a preliminary injunction."  *Herbert*, 2013 WL 5176766 at *3.  The plaintiff "'must demonstrate immediate *threatened* harm.'  The analysis demands a prospective, not a retrospective, examination of injury."  *Requa*, 492 F. Supp. 2d at 1281 (quoting *Caribbean Marine Servs. Co. v. Baldridge*, 844 F.2d 668, 674 (9th Cir. 1988)).  If the Court reaches this factor, it too compels denial of a preliminary injunction.[12]

## D.    The Balance of Equities and Public Interest Weigh Against Injunctive Relief.

This Court has explained that it "considers issues of protected speech under the First Amendment to be highly significant and takes issues of protected speech very seriously.  For purposes of injunctive relief analysis, however, 'serious questions,' while they need not 'promise a certainty of success … must involve a fair chance of success on the merits.'"  *Requa*, 492 F. Supp. 2d at 1281 (quoting *Republic of Philippines v. Marco*, 862 F.2d 1355, 1362 (9th Cir. 1988))

---

[12] Plaintiffs significantly misrepresent *Monterey Mech. Co. v. Wilson*, 125 F.3d 702, 715 (9th Cir. 1997).  Mot. for P.I. at 14:11-12.  Missing from Plaintiffs' quotation from this case is the material word emphasized as follows: "an alleged constitutional infringement will **often** alone constitute irreparable harm." 125 F.3d at 715 (emphasis added).  In addition to misquoting that decision, Plaintiffs neglected to mention that the Court in *Monterey Mechanical* was "compelled to conclude" that the challenged statute "is unconstitutional."  *Id.*

DEFENDANT CITY OF SAMMAMISH'S OPPOSITION TO
PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION - 23
(CASE NO. 2:21-cv-01264 MJP)

SUMMIT LAW GROUP, PLLC
315 FIFTH AVENUE S., SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone:  (206) 676-7000
Fax:  (206) 676-7001

1   (quotation marks omitted).  When the public interest is involved, as it is here, "it is necessary to

2   determine whether that interest favors the moving or nonmoving party."  *Id.* at 1282.

3          In *Requa*, this Court explained that, in the context of a high school student's claimed

4   violation of his free speech rights,

5              [t]he public also has a deeply vested interest in the creation and maintenance
               of an educational system where teachers can practice their vitally important
6              craft in an environment free from harassment, lewdness and inappropriate
               behavior.  The student conduct code promotes such an atmosphere.  The
7              public's interest in the school district's ability to maintain a working and
               learning environment where violations of those legitimate expectations are
8              sanctionable favors Defendants' position and the denial of the requested
               restraining order.
9

10  *Id.* at 1283.  Likewise, here, the public, including the citizens of the City of Sammamish who

11  comply with the Facebook commenting rules, have an interest in being able to readily navigate the

12  City's page to find the critical public safety and other information being posted by the City

13  without having to wade through Plaintiffs' regular, repeated off-topic comments.  *Stevens*, 2021

14  WL 2345353 at *4 ("Allowing members of the public to speak unrestricted in a limited public

15  forum risks impinging on the First Amendment rights of other would-be participants.").

16         Plaintiffs also fail to satisfy this final factor of the preliminary injunction test.

17                                    **IV.   CONCLUSION**

18         Plaintiffs seek a "particularly disfavored" mandatory injunction.  *Herbert*, 2013 WL

19  5176766 at *2.  Such an injunction "should not be issued unless the facts and the law clearly favor

20  the moving party."  *Dahl*, 7 F.3d at 1403.  Plaintiffs have not met this standard.  That is because

21  they come before this Court misrepresenting the facts and misapprehending the law.  The City of

22  Sammamish has created a limited public forum, bounded by the City's viewpoint-neutral

23  regulations for speaking in the forum.  The City has applied those regulations to Plaintiffs and

24  others without consideration of viewpoint.

25         As Plaintiffs have no constitutional right to make off-topic comments, the City of

26  Sammamish respectfully requests denial of the pending motion.

DEFENDANT CITY OF SAMMAMISH'S OPPOSITION TO
PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION - 24
(CASE NO. 2:21-cv-01264 MJP)

DATED this 1st day of November, 2021.

Respectfully submitted,

SUMMIT LAW GROUP, PLLC
*Attorneys for Defendant City of Sammamish*

By s/ Jessica L. Goldman
    Jessica L. Goldman, WSBA #21856
    jessicag@summitlaw.com


By s/ Jesse L. Taylor
    Jesse L. Taylor, WSBA #51603
    jesset@summitlaw.com

SUMMIT LAW GROUP, PLLC
315 FIFTH AVENUE S., SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone:  (206) 676-7000
Fax:  (206) 676-7001