1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

SARAH HAWES KIMSEY, TARUL KODE TRIPATHI, CATHERINE FREUDENBERG,

Plaintiffs,

v.

CITY OF SAMMAMISH, CELIA WU,

Defendants.

CASE NO. C21-1264 MJP

ORDER GRANTING PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION

This matter comes before the Court on Plaintiffs' Motion for Preliminary Injunction. (Dkt. No. 4.) Having reviewed the Motion, Defendants' Opposition (Dkt. No. 17), the Reply (Dkt. No. 24), the Surreply (Dkt. No. 30), and all supporting materials, the Court GRANTS the Motion and ENTERS a Preliminary Injunction on terms specified in this Order. The Court finds this matter suitable for decision without oral argument, which only Plaintiffs requested.

1

## BACKGROUND

2        The City of Sammamish created and operates a Facebook page entitled "City of

3   Sammamish – Government." (Complaint ¶ 4.1.) Defendant Celia Wu is the Communications

4   Manager for the City, and she and her "team" manage the City's Facebook page where they post

5   "information relevant to the residents of Sammamish, such as upcoming events and updates . . .

6   [and] . . . matters important to public safety, such as severe weather events, power outages, road

7   and park closures, heatwaves, snow storms, wildfire smoke, shootings and fires, and Covid-19

8   related news." (Declaration of Celia Wu ¶ 3 (Dkt. No. 20).) Due to COVID-19, the City also

9   live-streamed city council meetings on its Facebook page for six months starting in the Spring of

10  2020. (Compl. ¶ 4.4; Wu Decl. ¶ 6.) Although only the City can "post" to the Facebook page,

11  "[a]ny member of the public can 'comment' on those posts. . . ." (Wu Decl. ¶ 3.) The City also

12  "allowed and encouraged citizens to post comments both during the live stream and after the

13  meetings [we]re published" on its Facebook page. (Compl. ¶ 4.4.)

14        As part of its Facebook page, the City has created rules prohibiting certain kinds of

15  citizen comments. (Compl.¶ 4.2.) The rules state that "[i]nappropriate and prohibited content

16  [are] subject to immediate removal from the site," though the rules do not require comments to

17  be pre-approved. (Id.) Inappropriate and prohibited content includes any comment:

18            (1) That is not related to the particular article being commented on;
              (2) Promotes or advertises commercial service, entities or products;
19            (3) Supports or opposes political candidates or ballot propositions;
              (4) Is obscene;
20            (5) Discusses or encourages illegal activity;
              (6) Promotes, fosters or perpetuates discrimination on the basis of creed, color, age,
21            religion, gender, marital status, status with regard to public assistance, national origin,
              physical or mental disability or sexual orientation;
22            (7) Provides information that may potentially compromise the safety or security of the
              public or public systems;
23            (8) Violates a legal ownership;
              (9) Sexual content or links to sexual content;

24

(10) Comments from children under 13 cannot be posted in order to comply with the Children's Online Privacy Act; and
(11) Anonymous posts.

(Compl. ¶ 4.2.)

As clarified in their Reply brief, Plaintiffs seek to enjoin the City's use of Rule 1—the "off-topic" rule—to delete comments made in response to the City's posts. Wu claims that the City's "rules for commenting on its Facebook page are intended to help the City effectively communicate relevant information to the public and to protect the rights of those who want to discuss the information being conveyed." (Wu Decl. ¶ 5.) Wu believes the comments that violate the City's "off topic" rule "distract from and dilute the important information that the City is trying to convey to the public." (Wu Decl. ¶ 5.) But the City "encourage[s] and welcome[s] participation in the City's Facebook page within the posted and established rules." (See Ex. B to the Declaration of Jesse Taylor at 2 (Dkt. No. 31-2 at 4).)

Plaintiffs are current and former residents of Sammamish who are active in City politics and regularly post comments critical of the City in response to posts the City makes on its own Facebook page. (Compl. ¶¶ 2.1-2.3, 4.6-15, 4.18, 4.21-.26.) Plaintiffs claim the City has deleted many of their comments critical of the City that they made in response to City Council meeting videos (id. ¶¶ 4.6-15) and stand-alone City posts (id. ¶¶ 4.18, 4.21-.26). Plaintiffs allege the City deletes their critical comments without providing any explanation.

The Court reviews one relevant example. Plaintiff Tarul Tripathi posted a comment on the City's Facebook page in response to the City's post on behalf of the Sammamish Police Foundation, which uses the "thin blue line" flag as part of its branding and messaging. (Compl. ¶ 4.17.) The comment irked Tripathi because, as alleged, the thin blue line "flag originally stood for solidarity and professional pride for police officers . . . [but] has also been used in association

1  with the Blue Lives Matter movement, a pro-police group formed in response to Black Lives

2  Matter, white supremacists and was flown by violent insurrectionists at the Capitol on January 6,

3  2021." (Id.) Tripathi's comment stated: "This is disturbing. Its Black History Month. The

4  Sammamish Police Foundation continues to use a symbol indicative of support/solidarity with

5  white supremacist groups. Do better." (Compl. ¶ 4.18.) The City admits it deleted this comment.

6  (Wu Decl. ¶ 20.) When Tripathi asked the City why it did so, she was told that the "comment

7  was not related to the particular post being commented on." (Compl. ¶¶ 4.18, 4.20.) The City has

8  now confirmed that the comment was deleted for violating the "off topic" rule. (Wu Decl. ¶ 20.)

9      In its opposition to the Motion for Preliminary Injunction, the City avers that the only

10 comments it has deleted violated its "off topic" rule. (Wu Decl. ¶¶ 7, 20, 22-28.) The City admits

11 that it deleted the comments Plaintiffs identify in Paragraphs 4.18, 4.21-4.26 of the Complaint.

12 Wu states that the "City deletes comments that violate its rules regardless of the substance of the

13 comment, the individual posting the comment, or whether the City or its employees agree or

14 disagree with the viewpoint being expressed." (Wu Decl. ¶ 7.) And she claims that "[b]efore

15 deleting a comment, the City's communication team determines whether the comment is in

16 violation of the City's rules for commenting on its Facebook page." (Wu Decl. ¶ 19.)

17     Defendants also contend they did not delete any of the 59 comments Plaintiffs made in

18 response to City Council meeting videos that they have claimed were deleted. (Wu Decl. ¶¶ 9-

19 18.) Wu claims that 56 of the 59 comments identified are still publicly visible and that three

20 others that are "missing" were not deleted by the City. (Id.) Plaintiffs now admit that these

21 comments now appear to be publicly visible. (Reply at 2.) This obviates the need for the Court to

22 consider the Parties' dispute over the reasons why certain of these comments may or may not

23

24

1  have been deleted and by whom. The Court focuses instead on the comments Defendants admit

2  to having deleted.

3  **ANALYSIS**

4  **A.      Preliminary Injunction Standard**

5          To determine whether a preliminary injunction may issue, the Court considers whether:

6  (1) the plaintiff is likely to succeed on her claims, (2) the plaintiff will suffer irreparable harm in

7  the absence of preliminary relief, (3) the equities favor plaintiff, and (4) the public interest favors

8  entry of a preliminary injunction. Fed. R. Civ. P. 65(a); Winter v. Nat'l Res. Def Council, Inc.,

9  555 U.S. 7, 20 (2008); Alliance for the Wild Rockies v. Cottrell, 632 F.3d 1127 (9th Cir. 2011).

10  "When the government is a party, these last two factors merge." Drakes Bay Oyster Co. v.

11  Jewell, 747 F.3d 1073, 1092 (9th Cir. 2014).

12          As a preliminary matter Defendants incorrectly argue that the injunction Plaintiffs seek is

13  a disfavored mandatory injunction. A mandatory injunction "goes well beyond simply

14  maintaining the status quo Pendente lite," and requires the enjoined party to take affirmative

15  action. Anderson v. United States, 612 F.2d 1112, 1114 (9th Cir. 1979) (citation and quotation

16  omitted); see Garcia v. Google, Inc., 786 F.3d 733, 740 (9th Cir. 2015) (holding that a requested

17  injunction demanding Google to remove videos was a mandatory injunction). Here, Plaintiffs do

18  not ask that Defendants take any affirmative action. They simply ask the Court to prevent

19  Defendants from removing comments that members of the public post that Defendants might

20  otherwise conclude violate the "off-topic" rule. Such an injunction prevents Defendants from

21  taking an affirmative act—it does not require them to do anything affirmative. Defendants are

22  merely being asked to preserve comments from the public and maintain the status quo. Plaintiffs

23

24

1  do not therefore seek a mandatory injunction and the Court rejects Defendants' contrary

2  argument.

3  **B.      Likelihood of Success on the Merits**

4          To weigh Plaintiffs' likelihood of success on their First Amendment claim, the Court

5  must determine the nature of the forum at issue and whether the City's justification for its "off

6  topic" rule meets the applicable constitutional standard. Before reaching these issues, the Court

7  briefly addresses the nature of the speech at issue. And the Court concludes its analysis with a

8  brief consideration the merits of Plaintiffs' claim that Defendants are engaged in viewpoint

9  discrimination by only deleting comments critical of the City.

10         **1.      Protected Speech**

11         Though uncontested, the Court finds the speech at issue is protected speech under the

12  First Amendment. As the Supreme Court has noted, the court "must first decide whether" the

13  speech in which the individual plaintiffs seek to engage "is speech protected by the First

14  Amendment." Cornelius v. NAACP Legal Def. & Educ. Fund, Inc., 473 U.S. 788, 797 (1985).

15  Defendants make no effort to contest that Plaintiffs' speech is unprotected. This is unsurprising.

16  "[T]he First Amendment reflects a 'profound national commitment' to the principle that 'debate

17  on public issues should be uninhibited, robust, and wide-open.'" Boos v. Barry, 485 U.S. 312,

18  318 (1988) (quoting New York Times Co. v. Sullivan, 376 U.S. 254, 270 (1964)). Here, the

19  speech at issue falls within the broad category of public debate on matters of local importance

20  and it is protected under the First Amendment.

21         **2.      Forum Analysis**

22         The level of scrutiny the Court applies to the City's "off topic" rule depends on the nature

23  of the forum, an issue the Parties contest. Although Plaintiffs initially argued that the comment

24

section is a public forum, they now ask the Court to "hold that the comment section of the City of Sammamish's Facebook page constitutes a 'designated' public forum." (Reply at 6.) The Court thus does not consider whether the comment section of the City's Facebook page is a public forum. Below, the Court reviews the standards of forum classification and agrees with Plaintiffs that the City has created a "designated" public forum to which strict scrutiny applies.

"The Supreme Court has classified forums into three categories: traditional public forums, designated public forums, and limited public forums." Seattle Mideast Awareness Campaign v. King Cty., 781 F.3d 489, 496 (9th Cir. 2015) ("SeaMAC") (citing Int'l Soc'y for Krishna Consciousness, Inc. v. Lee, 505 U.S. 672, 678–79 (1992)). First, traditional public forums are "places devoted to assembly and debate" such as "streets and parks which 'have immemorially been held in trust for the use of the public, and, time out of mind, have been used for purposes of assembly, communicating thoughts between citizens, and discussing public questions." Perry Educ. Ass'n v. Perry Loc. Educators' Ass'n, 460 U.S. 37, 45 (1983) (citation and quotation omitted). In such places "the rights of the state to limit expressive activity are sharply circumscribed" and strict scrutiny applies. Id. Second, "designated public forums" are created by "a government entity . . . [when] government property that has not traditionally been regarded as a public forum is intentionally opened up for that purpose." Pleasant Grove City, Utah v. Summum, 555 U.S. 460, 469–70 (2009) (citing Cornelius, 473 U.S. at 802). Such a forum is "subject to the same strict scrutiny as restrictions in a traditional public forum." Id. at 469-70. Third, "a government entity may create a forum that is limited to use by certain groups or dedicated solely to the discussion of certain subjects." Id. at 470. "In such a forum, a government entity may impose restrictions on speech that are reasonable and viewpoint neutral." Id. (citing Good News Club v. Milford Central School, 533 U.S. 98, 106–107 (2001)). "The State

1   may be justified in reserving [its forum] for certain groups or for the discussion of certain

2   topics." Good News, 533 U.S. at 106 (citation and quotation omitted).

3          "The principal difference between traditional and designated public forums is that the

4   government may close a designated public forum whenever it chooses, but it may not close a

5   traditional public forum to expressive activity altogether." SeaMAC, 781 F.3d at 496. A public

6   forum is open to "indiscriminate use," Perry, 460 U.S. at 47, and "almost unfettered access,"

7   Forbes, 523 U.S. at 678. By contrast, "[t]he government creates a designated public forum when

8   it intends to make property that hasn't traditionally been open to assembly and debate 'generally

9   available' for 'expressive use by the general public or by a particular class of speakers.'"

10  SeaMAC, 781 F.3d at 496 (quoting Arkansas Educ. Television Comm'n v. Forbes, 523 U.S. 666,

11  677–78 (1998)).

12         Though "the source of much confusion," distinguishing a "designated" from a "limited"

13  public forum requires an assessment of the nature of the forum and the government's intent.

14  Hopper v. City of Pasco, 241 F.3d 1067, 1074-76 (9th Cir. 2001). "[T]he government creates a

15  designated public forum by imbuing its property with the 'essential attributes of a traditional

16  public forum.'" SeaMAC, 781 F.3d at 496 (quoting Pleasant Grove, 555 U.S. at 469). "To

17  determine whether the government has imbued its property with the essential attributes of a

18  traditional public forum, we focus on the government's intent." Id. (citing Cornelius, 473 U.S. at

19  802). The Court considers three factors to determine governmental intent. See id. First, the Court

20  considers the terms of the policy governing access to assess the level of permitted uses. "If the

21  government requires speakers seeking access to obtain permission, under pre-established

22  guidelines that impose speaker-based or subject-matter limitations, the government generally

23  intends to create a limited, rather than a designated, public forum." Id. at 497 (citation omitted).

24

Second, "[i]f the government has adopted a policy governing access to the forum, [the Court] examine[s] how that policy has been implemented in practice." <u>Id.</u> For example, if the government routinely ignores a rule that requires speakers to obtain permission to use the space, then the government may have created a "designated" public forum. <u>Id.</u> Third, the Court considers the nature of the property at issue. <u>Id.</u> "If the property is designed for and dedicated to expressive activities, courts will more readily infer the intent to create a designated public forum." <u>Id.</u> (citation and quotation omitted)." "On the other hand, if the property is used primarily as part of a government-run commercial enterprise, and the expressive activities the government permits are only incidental to that use, that fact tends to support finding a limited public forum." <u>Id.</u> (citation omitted).

The allegations and evidence presented confirm that the City intended to create a "designated" public forum when it allowed the public to comment on the City's Facebook posts. First, by allowing comments on its Facebook posts and City Council meetings without any prior approval, the City made this forum wide open to the public and imposes no requirements to obtain prior approval before making comments. The comment section is akin to a traditional public forum where access is "unfettered" and "indiscriminate." <u>See</u> <u>Perry</u>, 460 U.S. at 47; <u>Forbes</u>, 523 U.S. at 678. And while there are rules for comments after they have been made, they do not constrain the public's initial access. This fact is important because prior approval weighs in favor of a limited forum—a fact absent here. <u>See</u> <u>Perry</u>, 460 U.S. at 47; <u>Lehman v. City of Shaker Heights</u>, 418 U.S. 298, 302-04; <u>SeaMAC</u>, 781 F.3d at 497-98. Second, Plaintiffs have demonstrated that the City does not always apply its "off topic" rule consistently. Counsel for Plaintiffs avers that she has located many off-topic comments that remain on the City's Facebook page, and provides examples of these off-topic comments that have not been deleted. The City

1    itself has submitted evidence that it does not consistently apply the "off topic" rule. With their

2    Surreply, Defendants append a copy of the post to which Plaintiff Tripathi's comment objecting

3    to the City promotion of the Sammamish Police Foundation was deleted as being "off topic."

4    (See Ex. B. to Taylor Decl. (Dkt. No. 31-2).) The post includes a comment from another user

5    with essentially the same "off topic" criticism of the City's support for the Police Foundation:

6    the "Police Explorers program is supported by the Sammamish Police Foundation, which has

7    promoted a white supremacy symbol twice now on their cover photo and which you are in turn

8    promoting by sharing their page here. . . . The youth in Sammamish deserve better. . . ." (Id. at 2-

9    3 (Dkt. No. 31-2 at 4-5); compare with Compl. ¶ 4.18 (Plaintiff Tripathi's deleted comment

10   stated: "The Sammamish Police Foundation continues to use a symbol indicative of

11   support/solidarity with white supremacist groups. Do better.") "[C]onsistency in application is

12   the hallmark of any policy designed to preserve the non-public status of a forum." Hopper, 241

13   F.3d at 1076. The lack of consistent application of the "off topic" rule here weighs heavily in

14   favor of finding a designated forum because an unevenly enforced rule "is no policy at all for

15   purposes of public forum analysis." Id. Third, the nature of Facebook as a forum for public

16   discourse and the enabled commenting field strongly suggest that the Facebook page is a space

17   "designed for and dedicated to expressive activities." Cornelius, 473 U.S. at 802. This supports

18   finding a designated public forum. By enabling comments to City Council meetings or City posts

19   in the first place, the City invited the public to comment on the posts and City Council meetings.

20   (See Taylor Decl. Ex. B at 2.) And Facebook itself is designed for individuals to share

21   information and express ideas. It is not part of a government-run enterprise that only allows

22   incidental expressive activities, such as the advertising space on the side of a city bus. See

23   SeaMAC, 781 F.3d at 497-98 (finding a limited public forum where the advertising space on a

24

bus was incidental to the commercial nature of the bus service). The Court's consideration of these factors leads it to conclude that the comment section to the City's Facebook posts is a designated public forum to which strict scrutiny applies.

### 3. Strict Scrutiny

Because the City admits its off-topic rule is content-based, (Defs. Opp. at 15), it can only survive strict scrutiny if it "furthers a compelling interest and is narrowly tailored to achieve that interest," Reed v. Town of Gilbert, Ariz., 576 U.S. 155, 171 (2015) (citation and quotation omitted). Because "[c]ontent-based laws—those that target speech based on its communicative content—are presumptively unconstitutional," the City bears the burden to showing that its "off topic" rule is "narrowly tailored to serve compelling state interests." Id. at 163. Defendants provide no argument or explanation as to how the "off topic" rule satisfies strict scrutiny. This alone justifies finding a strong likelihood that Plaintiffs will succeed on the merits of their First Amendment claim.

Even if the Court considers the justification for the "off topic" rule Defendants identify (but nowhere argue is a compelling interest), it would not be a compelling governmental interest. Defendants claim that the "off topic" rule avoids distraction from and dilution of governmental posts about public safety and upcoming events. (Wu Decl. ¶¶ 3, 5.) While public safety may be a compelling governmental interest, see, e.g., McCullen v. Coakley, 573 U.S. 464, 486-87 (2014), the avoidance of distraction and dilution of public safety messages does not appear to be a compelling governmental interest. The Court is aware of no such authority. Even if the Court were to find distraction and dilution of public safety messages a compelling governmental interest, the "off topic" rule is not narrowly tailored to meet that goal. As the exhibits submitted to the Court reveal, any comments—whether "on" or "off topic"—add substantial volume to a

1    post but do not obscure or impede the public's ability to review the public safety information

2    contained in the original post. (See, e.g., Wu Decl. Exs. A-K.) The original posts remain

3    prominently featured even if comments appear below it. Public comments are not akin to, say,

4    graffiti scrawled over a billboard that contains a city's effort to disseminates public safety

5    information. The exclusion of only "off topic" comments while allowing "on topic" comments is

6    overbroad because the inclusion of any comments has effectively the same minimal distractive

7    and dilutive effect.

8        **4.    Viewpoint Discrimination**

9        Plaintiffs also assert that the City has engaged in viewpoint discrimination by selectively

10   deleting comments that are critical of the City and allowing other off-topic comments to remain.

11       "Discrimination against speech because of its message is presumed to be

12   unconstitutional." Rosenberger v. Rector & Visitors of Univ. of Virginia, 515 U.S. 819, 828

13   (1995). "The government must abstain from regulating speech when the specific motivating

14   ideology or the opinion or perspective of the speaker is the rationale for the restriction." Id.

15       Plaintiffs' claim turns largely on a disputed record about whether certain posts have been

16   deleted and who has deleted them. At present, the Court cannot fully assess the likelihood of

17   success on the merits of this claim without accepting certain disputed facts as true. The Court

18   will not resolve that dispute with this Order. But this does not prevent the Court from otherwise

19   finding a likelihood of success necessary to sustain the preliminary injunction given the Court's

20   analysis above that the "off topic" rule cannot survive strict scrutiny.

21                          *      *      *

22       Plaintiffs have demonstrated a strong likelihood of success on the merits. Because the

23   comment section is a "designated public forum," strict scrutiny applies. Yet the City fails to

24

1    identify any compelling interest its rule might serve or how it is narrowly tailored to serve even

2    the limited interests identified. This factor favors entry of the preliminary injunction.

3    **C.       Irreparable Harm**

4           Plaintiffs have demonstrated irreparable harm. "Unlike monetary injuries, constitutional

5    violations cannot be adequately remedied through damages and therefore generally constitute

6    irreparable harm." Nelson v. National Aeronautics and Space Admin., 530 F.3d 865, 882 (9th

7    Cir. 2008), rev'd and remanded on other grounds, 562 U.S. 134 (2011). Plaintiffs have here

8    demonstrated that their rights under the First Amendment are being infringed and the continued

9    infringement is an irreparable harm.

10   **D.       Equities and Public Interest**

11          The equities here favor Plaintiffs. The balance between the City's interest in preventing

12   off-topic comments does not outweigh the Plaintiffs' right to comment on the City's posts and

13   activities. The City may still post information on matters of public safety and other events in the

14   area. It faces no hardship from an injunction prohibiting the removal of "off topic" comments.

15   **E.       Bond**

16          Plaintiffs ask the Court to waive the bond requirement and Defendants voice no

17   opposition. There do not appear to be any costs and damages that Defendants could claim if they

18   are found to have been wrongly enjoined. See Fed. R. Civ. P. 65(c). The Court accordingly

19   waives the bond requirement.

20   **F.       Motion to Strike**

21          Defendants ask the Court to strike new arguments and evidence submitted with Plaintiffs

22   Reply. The Court largely agrees with the requests, as outlined below.

23

24

1    Defendants request the Court to strike the following: (1) a new declaration from Plaintiff

2    Kimsey in which she identifies additional comments she alleges were deleted; (2) a declaration

3    from a former employee of the City who avers that Defendant Wu deleted certain posts critical of

4    the City and that the City's attorney previously stated that the Facebook page is a public forum;

5    and (3) a declaration from Plaintiffs' counsel that reports on her own review of comments she

6    determined were off topic but were not deleted and her attestation that the Police Explorer post at

7    issue in this case was deleted. Defendants ask the Court to strike any argument based on these

8    materials.

9    First, the Court GRANTS the motion to strike in part and STRIKES Kimsey's declaration

10   filed with the reply. The comments Kimsey claims to have been deleted could have been

11   identified before or with the Motion. Plaintiffs have not provided any basis to justify their late

12   inclusion, and the declaration does not appear to respond to a novel argument presented by

13   Defendants. The Court STRIKES the declaration and has not relied on it in reaching its decision

14   on the Motion.

15   Second, the Court GRANTS the motion to strike in part and STRIKES the declaration

16   submitted by the former employee of the City, Kate Langsdorf. The information in her

17   declaration concerns events from 2020, which should have been available to Plaintiffs before

18   they filed their Motion. While Plaintiffs may not have been aware of this information, they have

19   nowhere explained why they only learned about it after filing their Motion. That justifies its

20   exclusion, and the Court has not considered the declaration.

21   Third, the Court DENIES the motion to strike in part as to the declaration of counsel.

22   Counsel's declaration presents the results of her review of the City's Facebook page to find off-

23   topic comments that were not deleted. This information responds directly to the novel argument

24

ORDER GRANTING PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION - 14

1  the City raised in its opposition that the comment section is only a "limited" public forum where

2  the rules are consistently applied. Because the question of consistency in a rule's application is

3  central to that analysis, Plaintiffs were justified in presenting evidence related to this issue in the

4  Reply. Defendants also ask the Court to strike counsel's statement that the Sammamish Police

5  Foundation post was deleted, an argument premised on defense counsel's attestation that the post

6  is still publicly available. The Court need not resolve this apparent dispute of fact because the

7  Court has not considered counsel's claim or statements about this post. It is not relevant or

8  necessary to consider in ruling on Plaintiffs' Motion. Rather than strike the statement, the Court

9  merely DENIES the motion strike as moot.

10  **CONCLUSION**

11       Plaintiffs have presented sufficient and cogent evidence justifying the imposition of a

12  preliminary injunction that bars Defendants from applying the "off topic" rule to any public

13  comments made in response to the City's Facebook posts. Plaintiffs have demonstrated the

14  likelihood of success on the merits of their First Amendment claim—the rule is a content-based

15  restriction in a designated public forum that does not survive strict scrutiny. Plaintiffs face an

16  irreparable harm to their rights under the First Amendment absent an injunction. And the equities

17  and public interest favor the injunction. Accordingly, the Court GRANTS the Motion and hereby

18  ENJOINS Defendants from enforcing its rule prohibiting comments that are "not related to the

19  particular article being commented" for the pendency of this litigation.

20       The clerk is ordered to provide copies of this order to all counsel.

21       Dated November 22, 2021.

22

23                                              Marsha J. Pechman
                                                United States Senior District Judge
24